MONCURE, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the county court of Amherst county, rendered on the 20th day of February, 1880, whereby the plaintiff in error, Nelson Mitchell, was convicted of murder in the first degree, and sentenced to be hung therefor. The following is a statement of the case, or so much of it, as seems to be proper to be stated, in order to its correct understanding and decision.
On the 15th day of December, 1879, he was indicted by a grand jury in the said county court, for having, on the 14th day of November, 1879, in the said county, murdered John C. Gillespie. On the 17th day of February, 1880. being arraigned in the said court on the said indictment, he pleaded not guilty thereto, and was put upon his trial; in the progress of which, to-wit: on the next day, on his motion, the court gave to the jury to following instruction, to-wit:
“If the jury believe from the evidence that the deceased made an assault upon the prisoner with a stick, and struck him one or more severe blows, and that the prisoner, immediately thereafter, and in sudden passion produced by the blows aforesaid, struck and cut the deceased, causing his death without necessity, this is not murder, either in the first or second degree, but is voluntary manslaughter.”
On the 19th day of February, 1880, the jury brought in a verdict in the case in the following words:
*“We, the jury, find the prisoner, Nelson Mitchell, guilty of murder in the first degree.”
Whereupon the accused moved the court to set aside the verdict and grant him a new trial, which motion the court overruled; to which opinion of the court he filed a bill of exceptions, which was signed, sealed and enrolled by the court, and made a part of the record. And the court certified therein, that the following are the facts and all the facts proved on the trial of the said Nelson Mitchell:
“That on the 14th day of November, in the year 1879, the deceased, John C. Gillespie, went to the house occupied by the said Nelson Mitchell, in Amherst county, for the purpose of employing Editha Brown, a sister-in-law of the prisoner, to plow in some vwheat. The prisoner was engaged in drawing timber for baskets; the deceased, after having talked to the woman at the house, went to the place where the prisoner was at work, near said house and in said county, when the prisoner asked the deceased about paying Editha Brown for some work which she had done for the deceased, and remarked that he did not think one-half bushel of corn was enough for four days’ work; the deceased replied to him that he had already heard him tell Editha Brown that he would pay her until she was satisfied; the prisoner then asked him again, ‘Do you think one-half bushel of corn is enough for four days’ work? I think it is damned little pay’; to which the deceased replied, ‘you must not talk to me in that way’; the prisoner said, T will talk as I damn please’; the deceased immediately stooped down and picked up a white-oak stick between four and five feet long, an inch wide, and an inch thick, and *627 struck the prisoner, who was sitting down on a horse used for drawing timber for baskets, making one severe blow on the back, and one severe blow near *the back of the neck, when the prisoner immediately reached down and picked up a pole-axe, which was lying in reach of where he was sitting, and raising up struck with the axe in his right hand, cutting the left hand of the deceased, in which he was holding the white-oak stick before men-titioned, when the said stick dropped out of the hand of the deceased, who had turned as if to get out of the way of the prisoner, who, with the axe in both hands, after the deceased had retreated 8 or 10 feet, with his back to the accused, struck the deceased just above the hips, in the back, somewhat to the left side, cutting the spinal column in two, passing into the hip bone, and penetrating to the hollow; the wound was eight inches long and five inches deep; the blows given by the deceased, and those given by the prisoner, were all in rapid succession, occupying but a moment of time; and the prisoner struck the second and fatal blow with the axe as quickly after the first as it was possible, after the above change of position, to do — but it was given while the deceased was retreating with his back to the prisoner. The deceased survived from the middle of the day, on Friday, when the wound was given, until the following Monday evening. about four o’clock, when he died from the effect of the wounds given by the prisoner. It wras proven that prisoner and deceased had been friendly prior to the difficulty, but that in the spring preceding the homicide, the prisoner said, in talking about some railroad ties which he and deceased were getting out, he would bust deceased open if he fooled with him.”
On the 20th day of February, 1880, the prisoner was sentenced to be hung for the murder aforesaid on the 23d day of April next ensuing.
A petition for a writ of error and super-sedeas to the said judgment was thereafter presented by the counsel *of the prisoner to the judge of the circuit court of the said county of Amherst, who refused the same by an endorsement on the said petition in these words:
“The writ of error prayed for in the petition is denied. The quarrel which led to the fatal rencountre was provoked and. brought on by the prisoner, and the jury might -well be satisfied that the object of the prisoner in doing it was, to provoke the deceased to strike him, in order to have a pretext to take his life, considered in reference to the character of the weapon used, and the circumstances under which the fatal blow was given, and that he was therefore guilty of murder in the first degree.
“G. A. Wingfield.
“March 3d, 1880.”
The prisoner then applied to a judge of this court for a writ of error and superse-deas to the said judgment, which were accordingly awarded; and this is the case which this court has now to dispose of.
It presents for our decision the question, whether there be any error in the judgment, for which it ought to be reversed? And that depends alone upon the question, whether it appears from the facts certified by the court below that the prisoner was not guilty of the murder of which he has been convicted.
The jury and the court below, who saw the witnesses and heard them testify, were of opinion, that the prisoner was guilty, and the former so found and the latter refused to set aside the verdict and grant a new trial. And the learned and distinguished judge of the circuit court of the county, the Hon. G. A. Wing-field, who was applied to for a writ of error to the judgment of the county court, on full consideration of the facts certified in the record, was of opinion, and so adjudged, *that there is no error in the judgment, and refused to award a writ of error thereto. “The writ of error prayed for in the petition,” he said in his refusal, “is denied.” See his refusal and the grounds of it endorsed on the record, and already inserted in the foregoing statement of the case. “The quarrel,” he said in that refusal, “which led to the fatal rencountre, was provoked and brought on by the prisoner, and the jury might well be satisfied that the object of the prisoner in doing it, was to provoke the deceased to strike him, in order to have a pretext to take his life, considered in reference to the character of the weapon used and the circumstances under which the fatal blow was given, and that he was therefore guilty of murder in the first degree.”
How can we, sitting as we now are, at a distance from the scene of this criminal transaction, disregard and reverse the opinion and the judgment of the court and jury who saw and heard the witnesses testify, in the presence of the prisoner, and upon the evidence before them, and from what they saw and heard, convicted the prisoner of murder in the first degree; and disregard and reverse the opinion of the learned circuit judge of the county in which the of-fence was committed, and the prisoner w.as tried — an opinion formed upon the full deliberation and examination of the record and the facts therein certified, in the exercise of his duty as judge of the circuit, to whom an application was made by the prisoner for a writ of error, but who denied the same for the reasons fully and strongly stated by him in his refusal.
If we look to the certificate of facts in the record, we find that it contains amply enough to warrant the judgment of the jury and of the court of trial, all of whom saw and heard the witnesses testify, and of the circuit judge, who is very learned and has had long ^experience and practice in such matters. On the occasion of the homicide the language of the deceased was mild and peaceful. He said not an objectionable word. On the other hand, the language of the prisoner to the deceased was harsh in the extreme. Speaking about what he, the deceased, intended to pay to a sister-in-law of the prisoner for some work done by her *628 for the deceased, the prisoner said: “I think it is damned little pay;” to which the deceased replied, “you must not talk to me in that way;” the prisoner said, “I will talk as I damned please;” the deceased'immediately stooped down and picked up a white-oak stick between 4 and 5 feet long, an inch wide and an inch thick and struck the prisoner who was sitting down on a horse used for drawing timber for baskets, making one severe blow on the back, and one severe blow near the back of the neck, when the prisoner immediately reached down and picked up a poleaxe which was lying in reach of where he was sitting, and raising up, struck with the axe in his right hand, cutting the left hand of the deceased, in which he was holding the white-oak stick before mentioned, when the said stick dropped out of the hand of the deceased, who had turned as if to get out of the way of the prisoner, who with the axe in both hands, after deceased had retreated 8 or 10 feet, with his back to the accused, struck the deceased just above the hips, in the back, somewhat to the left side, cutting the spinal column in two, passing into the hipbone and penetrating to the hollow; the wound was eight inches long and five inches deep.
See how terribly severe was this assault and battery committed by the prisoner upon the deceased, with a deadly weapon, while the deceased was retreating with his back to the prisoner. The latter must have intended to kill the deceased. He must have known that the *violent blows inflicted -by him with such a deadly weapon upon the deceased would produce his death. The provocation for inflicting them was wantonly brought on by the conduct of the prisoner which was wholly unwarranted. He provoked the blows - which were given him by the deceased, but which did him no harm so far as the record shows; and he may have provoked them for the purpose of obtaining a pretext for the deadly violence he after-wards used to the deceased while the latter was running away from him. In the spring preceding the homicide, the prisoner said, in talking about some railroad ties which he and deceased were getting out, “he would bust deceased open if he fooled with him.” He seemed to have been carrying out this threat when he cut the deceased with a poleaxe as .aforesaid.
All the facts aforesaid were before the court and jury by whom the prisoner was tried, and they thereon found him guilty of murder in the first degree; and were thereby well warranted in so doing. At all events, this court cannot reverse the judgment of the court below on the ground of any supposed error therein.
A case was referred to by the attorney-general in the argument of this case which has an important bearing thereon, and is the only one that need be referred to; that is Howell’s case, 36 Gratt. 995.
There is no error in the judgment of the county court, which is therefore affirmed.
Judgment affirmed.